IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| MID-ATLANTIC ENERGY CONCEPTS, INC. | : | Bky. No. 18-14790(REF) |
| d/b/a ATLANTIC ENERGY CONCEPTS | : | |
| | : | |
| Debtor | : | |
| | : | |
| In re: | : | CHAPTER 11 |
| | : | |
| LARALYNN, L.P. | : | Bky. No. 18-14792(REF) |
| | : | |
| Debtor | : | |

**MOTION OF MID-ATLANTIC ENERGY CONCEPTS, INC. d/b/a ATLANTIC ENERGY CONCEPTS FOR AN ORDER PURSUANT TO 11 U.S.C. § 363(c) AND FED.R.BANKR.P. 4001 AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION**

Mid-Atlantic Energy Concepts, Inc. d/b/a Atlantic Energy Concepts (the "Atlantic Debtor"), by and through its proposed counsel, Karalis PC, hereby moves this Court, pursuant to § 363 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Pursuant to 11 U.S.C. §363(c) and Fed.R.Bankr.P. 4001 Authorizing Debtor to Use Cash Collateral and Provide Adequate Protection, (the "Motion") and in support thereof, avers as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's Chapter 11 case and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein are § 363 of the Bankruptcy Code and Rule

4001 of the Bankruptcy Rules.

## BACKGROUND

i.

1.     On June 20, 2018 (the "Petition Date"), the Atlantic Debtor and an affiliate, LaraLynn, L.P. (the "LaraLynn Debtor", and together with the Atlantic Debtor, the "Debtors") filed voluntary petitions for relief pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have remained in possession of their assets and have continued management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.     A description of the Atlantic Debtor's business and the facts precipitating the filing of its Chapter 11 proceeding is set forth in the Declaration of Kenneth R. Field in Support of First Day Motions and a description of the LaraLynn Debtor's business and the facts precipitating the filing of its Chapter 11 proceeding is set forth in the Declaration of Brendon R. Field in Support of First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

## SECURED OBLIGATIONS

**A.     Pre-Petition Financing provided to Atlantic Debtor by Santander Bank, N.A.**

3.     On August 5, 2004, Santander Bank, N.A. formerly Sovereign Bank ("Santander") extended credit to the Atlantic Debtor, as borrower (the "Loan"), evidenced by a Master Loan Agreement dated August 5, 2004 (the "Loan Agreement") among Santander, the Atlantic Debtorand its affiliate, MBR (as hereinafter defined), and by a Line of Credit Note in the original principal amount of $300,000.00 of even date (the "Note").

4.     Also on August 5, 2004, Santander also extended credit to two affiliates of the Debtor, (i) MBR Construction Services, Inc. ("MBR") evidenced by a MBR Group Term Note

No. 1, in the original principal amount of $1,000,000.00, and (ii) KBF Enterprises, LP ("KBF") evidenced by a KBF Term Note in the original principal amount of $830,500.00.

5. By various surety agreements executed on August 5, 2004, (i) MBR, KBF, Brendon Field and his wife, Celine ("Brendon and Celine"), and Kenneth Field and his wife, Lynn ("Ken and Lynn") became sureties for the Atlantic Debtor's obligations to Santander, (ii) the Atlantic Debtor, KBF, Brendon and Celine, and Ken and Lynn became a surety for the obligations of MBR to Santander, and (iii) and the Atlantic Debtor, MBR, Brendon and Celine, and Ken and Lynn became a surety for the obligations of KBF to Santander. The surety agreements were modified from time to time.

6. The Loan Agreement was modified, from time to time, and lastly on June 28, 2017 by the Modification No. 21 to Master Loan Agreement (the "Modification No. 21"). Modification No. 21 extended the maturity date of the Note to September 30, 2017.

7. The Note was amended and restated, from time to time, and lastly on June 29, 2012 by a Fifth Amended and Restated Note, at which time the principal amount of the Note had been increased to $1,000,000 (the "Fifth Amended Note"). The Fifth Amended Note was further amended by that certain Allonge dated June 28, 2017. Also on June 29, 2012, the loan to MBR was increased to $6,000,000.00.

8. Pursuant to the terms of the Loan Agreement, in order to secure the Atlantic Debtor's obligations under the Loan, the Atlantic Debtor granted to Santander, among other things, a security interest in any and all of the personal property of the Atlantic Debtor of any nature whatsoever.

9. Santander alleges that it perfected its security interest by the filing of its UCC-1 financing statement with the appropriate governmental agencies.

10. On or about August 11, 2004 Santander filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 Financing Statement No. 20040857475 naming Mid-Atlantic Energy Concepts, Inc. as Debtor asserting a security interest in in all of Debtor's presently owned or hereafter acquired Accounts, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Farm Products, Fixtures, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Promissory Notes, Intellectual Property, and Tangible Chattel Paper and all Products and Proceeds of the same and debtor hereby assigns, transfers and sets over to Secured Party all of its presently owned and hereafter acquired Accounts and Proceeds thereof. UCC-3 continuation statements were filed on July 15, 2009, File No. 2009071508885 and on May 20, 2014, File No. 2014052007350.

11. As of the Petition Date, the outstanding balance due by the Atlantic Debtor to Santander under the Loan is approximately $1,022,000.

12. Upon information and belief the approximate balance due by the Atlantic Debtor's affiliates to Santander in connection with loans guaranteed by the Atlantic Debtor are as follows:

    a.    MBR    $3,300,000.00

    b.    KBF    $ 194,000.00

    c.    LaraLynn    $ 699,000.00

        Total    $4,193,000.00

**B.    Pre-Petition Financing provided to the LaraLynn Debtor by Santander**

13. On August 23, 2006, Santander extended credit to the LaraLynn Debtor, as borrower, in the amount of $1,120,000,00 (the "LaraLynn Loan"), evidenced by a Construction Loan Agreement (the "LaraLynn Loan Agreement") and Construction Note (the

"Note") in the principal amount of $1,120,000.00, each dated June 25, 2010, and executed by the LaraLynn Debtor.

14.     The LaraLynn Loan was secured and guaranteed by, among other things: (i) three (3) Open-End Mortgages granted to Santander by the LaraLynn Debtor, KBF, and Ken and Lynn, respectively; and (ii) Guaranties given to Santander by MBR, the Atlantic Debtor, KBF, Ken and Lynn, and Brendon and Celine.

15.     The LaraLynn Loan was modified, from time to time, as evidenced by: (i) a Modification to Construction Loan Agreement dated August 17, 2009; (ii) a Modification No. 2 to Construction Loan Agreement and an Amended and Restated Construction Note each dated March 23, 2012; (iii) an Amendment to Amended and Restated Construction Note dated March 1, 2017; and (iv) an Allonge to Amended and Restated Construction Note dated June 1, 2017.

16.     As of the Petition Date, the outstanding balance due under the LaraLynn Loan is approximately $699,000.

**C.    Claims of Sureties**

17.     Prior to the Petition Date, United States Fire Insurance Company, a/k/a Crum & Forster ("Crum & Forster"), Allied World National Assurance Company ("Allied World"), and Hartford Fire Insurance Company ("Hartford", collectively, the "Sureties", and together with Santander, the "Secured Parties") issued payment bonds to third parties on behalf of both the Atlantic Debtor and MBR in connection with jobs that each had accepted and which required a bond.

18. On or about March 2, 2017, MBR, the Debtor, KBF, Brendon and Celine, and Ken and Lynn entered into a General Indemnity Agreement in favor of Crum & Forster in connection with bonds to be issued on behalf of MBR and the Atlantic Debtor.

19. On or about April 2, 2018 Crum & Forster filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 Financing Statement No. 2018040400810 naming Mid-Atlantic Energy Concepts, Inc. as a debtor together with MBR Construction Services, Inc., KBF Enterprises, L.P., Brendon Field, Kenneth Field, Celine Field, and Lynn Field all as co-Debtors asserting a security interest in the following properties, asset and right of Indemnitors, wherever located, whether nor owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, machinery, equipment, tools, materials, supplies and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any Contract or contract rights, whether bonded or non-bonded, or rights to the payment of money, insurance claims and proceeds, and all general intangibles.

20. On or about August 11, 2014, MBR, the Atlantic Debtor, KBF, the LaraLynn Debtor, Brendon and Celine, and Ken and Lynn entered into a General Indemnity Agreement in favor of Hartford in connection with bonds to be issued on behalf of MBR and the Atlantic Debtor.

21. On or about July 13, 2017 Hartford filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 Financing Statement No. 2017071301721 naming Mid-Atlantic Energy Concepts, Inc. as a debtor together with MBR Construction Services, Inc., KBF Enterprises, L.P., Laralynn L.P., Medlar Electric Company, Bohrer-Reagan Co., Brendon Field, Kenneth Field, Celine Field, and Lynn Field all as co-Debtors asserting a security interest in a) all rights

of the Indemnitors in, arising from, or related to Bonds or any bonded or unbonded contracts, subcontracts and subcontract bonds and any extensions, modifications, alterations or additions thereto; and (b) All right, title and interest of the Indemnitors and to (1) the work performed on any Bonded or unbonded contract; and (2) all supplies, tools, plant, machinery, inventory, equipment and materials; and (3) all materials purchased for or chargeable to any contract or Bond which may be in the process of manufacture, construction or transportation or in storage anywhere; and (4) Books and Records, patent rights, copyrights, trademarks, and any and all bond claims or other affirmative claims; (5) computers, computer systems, programs and licenses; and (c) All rights arising out of insurance policies in which any Indemnitor has an interest as policyholder.

22. On or about May 15, 2013, MBR, the Atlantic Debtor, KBF, the LaraLynn Debtor, Brendon and Celine, and Ken and Lynn entered into an Agreement of Indemnity in favor of Allied in connection with bonds to be issued on behalf of MBR and the Atlantic Debtor.

23. On or about December 22, 2016 Allied filed with the Secretary of the Commonwealth of Pennsylvania UCC-1 Financing Statement No. 2016122300255 naming Mid-Atlantic Energy Concepts, Inc. as an Additional debtor together with MBR Construction Services, Inc., KBF Enterprises, L.P., Laralynn L.P., Medlar Electric Company, Bohrer-Reagan Co., Brendon Field, Kenneth Field, Celine Field, and Lynn Field all as Additional Debtors asserting a security interest in in the following, whether nor owned or hereafter existing or acquired: (a) all of the Principals' and/or Indemnitors' right, title and interest in, and arising in any manner out of, all contracts referred to in the Bonds (whether or not bonded), or in, or arising in any manner out of the Bonds; (b) any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds including, but not

limited to, all percentages retained, progress payments, deferred payments, compensation for extra work and proceeds of damage claims; (c) all of the Principals' and/or Indemnitors' rights, title and interest in and to all machinery, supplies, equipment, plant, tools and materials of every nature and description which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (d) all proprietary systems, software or any other assets or a similar nature which are employed by the Principals in connection with any and all contractual work referred to in the bonds; (e) all of the Principals' and/or Indemnitors' rights, title and interest in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (f) all actions, causes of actions, claims and demands whatsoever which the Principal and/or Indemnitors may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties or any subcontractor, laborer, or materialman; and (g) all proceeds of the foregoing.

24. The Sureties assert that by filing their UCC-1 financing statements with the appropriate governmental agencies they have a security interest in the assets of the Atlantic Debtor.

25. As of the Petition Date, the Sureties were handling numerous claims submitted on the bonds they issued on behalf of MBR. Since the resolution of the bond claims is ongoing, the Atlantic Debtor does not know the final amount of these claims.

26. The current estimated amount of these claims is as follows:

   a. Allied World has demanded the amount of $400,000 as collateral security for its estimated loss.

   b. Hartford projects a loss in the approximate amount of $7,500,000.00.

   c. Crum & Forster is projecting a loss in the approximate amount of $4,500,000.00.

The above amounts are estimates by the Sureties that are unliquidated, subject to change, and still being reviewed by the indemnitors.

## USE OF CASH COLLATERAL

27. The Atlantic Debtor would like to reach a consensual agreement with the Secured Parties on the Atlantic Debtor's use of cash collateral and adequate protection to be afforded to the Secured Parties after the Petition Date. In the event no agreement has been reached by the hearing date, the Atlantic Debtor is requesting that the Court authorize the use of cash collateral.

28. The Atlantic Debtor, in the normal course of its business, incurs obligations to suppliers for a variety of goods and services and its employees which are essential to the continued existence of the Atlantic Debtor as a going concern. Absent the immediate authority to use its cash the Atlantic Debtor does not have the funds with which to conduct business.

29. The Atlantic Debtor requires an immediate hearing to at minimum authorize the use of cash collateral for immediate expenditures and operating expenses. The Atlantic Debtor is in the process of preparing a projection (the "Budget") of its expected revenue from operations and operating costs. The Budget will be submitted prior to the hearing on this Motion.

30. Moreover, the Atlantic Debtor's next payroll comes due on Friday July 27, 2018. An abrupt cessation of the Atlantic Debtor's business would cause extreme hardship to the Atlantic Debtor's customers, its creditors, and employees. Simply stated, in order to continue the

operation of the Atlantic Debtor's business, it is necessary for the Atlantic Debtor to immediately be authorized to use its cash collateral.

31. It is also crucial that the Atlantic Debtor's post-petition payroll obligations be paid as these obligations come due.

32. The Atlantic Debtor must maintain its relationship with its employees so that the essential services they provide are uninterrupted. If the Atlantic Debtor's present employees terminate their employment, the Atlantic Debtor will be forced to hire new, untrained employees. As a result, clients will receive less than satisfactory service. The Atlantic Debtor will suffer negative publicity and its relationship with its creditors could also be jeopardized.

### **RELIEF REQUESTED**

33. The Atlantic Debtor requests that the Court authorize the Atlantic Debtor to use (a) cash, (b) proceeds of the pre-petition collateral, and (c) such other funds that the Atlantic Debtor obtains post-petition which may be subject to the Secured Parties' pre-petition security interest.

34. The Atlantic Debtor requests authority to use cash collateral in the amount to be set forth in the Budget.

35. The use of cash collateral is necessary in order for the Atlantic Debtor to be able to operate and pay its post-petition obligations as they come due.

36. Approval of the Atlantic Debtor's request to use cash collateral is in the best interest of the Atlantic Debtor, its estate and creditors.

37. In accordance with Bankruptcy Rule 4001, the Atlantic Debtor requests that the use of cash collateral first be preliminarily approved and then subsequently be finally approved at a subsequent hearing upon further notice to parties in interest.

38. In accordance with Bankruptcy Rule 4001, the Atlantic Debtor requests that the final hearing be scheduled so that at least fourteen (14) days-notice has been provided to parties in interest.

39. The entry of any Order authorizing the use cash collateral is without prejudice to the rights of the Atlantic Debtor, its creditors, any trustee appointed herein, or other party in interest, to contest the validity, extent or priority of any rights granted pursuant to any pre-petition loan agreement or any security interest arising out of or related to any pre-petition loan agreements.

40. Neither the Atlantic Debtor's use of cash collateral nor any payments that may be authorized by the Court to the Lenders constitute a waiver by the Secured Parties or the Atlantic Debtor or any other party in interest of any right or claim each may now have or in the future have with respect to any issue relating to the validity, extent or priority of the Secured Parties' security interests.

**WHEREFORE,** the Atlantic Debtor respectfully requests that the Court (i) enter the Interim Order and (ii) grant such other and further relief as this Court may deem just and proper.

> **Respectfully submitted,**
>
> **KARALIS PC**
>
> By:   /s/ Robert W. Seitzer
> ARIS J. KARALIS
> ROBERT W. SEITZER
> 1900 Spruce Street
> Philadelphia, PA 19103
> (215) 546-4500
> Proposed Attorneys for the Debtors

Dated: July 20, 2018