## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| MID-ATLANTIC ENERGY CONCEPTS, INC. | : | Bky. No. 18-14790(REF) |
| d/b/a ATLANTIC ENERGY CONCEPTS AND | : | |
| LARALYNN, L.P. | : | |
| | : | |
| | : | JOINTLYADMINISTERED |
| Debtors | : | |
| | : | |

---

## PLAN OF LIQUIDATION PROPOSED BY MID-ATLANTIC ENERGY CONCEPTS, INC. d/b/a ATLANTIC ENERGY CONCEPTS DEBTOR-IN-POSSESSION

---

ARIS J. KARALIS, ESQUIRE
ROBERT W. SEITZER, ESQUIRE
KARALIS PC
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Debtor

Dated:   March 14, 2019

# TABLE OF CONTENTS

**PAGE NO.**

ARTICLE 1    Definitions, Rules of Interpretation, and Computation of Time ...........................1
 A. Scope of Definitions ...................................................................................1
 B. Definitions ...................................................................................................1
 C. Rules of Interpretation ................................................................................9
 D. Computation of Time ..................................................................................9
 E. References to Monetary Figures ..................................................................9
 F. Exhibits .......................................................................................................9

ARTICLE 2    Classification of Claims and Interests .................................................................9
 2.1 Summary of Claims ....................................................................................9
 2.2 Classification of Claims............................................................................10
 2.3 Administrative Claims and Priority Tax Claims.......................................10

ARTICLE 3    Treatment of Classes of Claims .........................................................................11
 3.1 Class 1.  Secured Claim of Santander – Atlantic Energy Note.................11
 3.2 Class 2.  Secured Claim of SummitBridge – Guaranty Obligations.........11
 3.3 Class 3.  Secured Claim of Allied............................................................12
 3.4 Class 4.  Secured Claim of Hartford.........................................................13
 3.5 Class 5.  Secured Claim of C&F...............................................................14
 3.6 Class 6.  Priority Non-Tax Claims............................................................15
 3.7 Class 7.  General Unsecured Claims.........................................................15
 3.8 Class 8.  Interest Holders..........................................................................16

ARTICLE 4    Treatment of Unclassified Claims ......................................................................16
 4.1 Administrative Claims...............................................................................16
  4.1.1 Time for Filing Administrative Claims ........................................16
  4.1.2 Time for Filing Fee Claims..........................................................16
  4.1.3 Allowance of Administrative Claims ...........................................17
  4.1.4 Payment of Allowed Administrative Claim..................................17
  4.1.5 Professional Fees Incurred After the Effective Date....................17
 4.2 Treatment of Priority Tax Claims .............................................................17
 4.3 No Liability for Certain Tax Claims .........................................................17

ARTICLE 5    Provisions for Execution of the Plan ..................................................................17
 5.1 Retention of Assets by the Estate..............................................................17
 5.2 Disposition of Debtor's Assets..................................................................17
 5.3 Funds..........................................................................................................17
 5.4 Documents ..................................................................................................18
 5.5 Disbursements and Investment of Funds ...................................................18
 5.6 Final Decree ...............................................................................................18
 5.7 Winding Up Affairs ...................................................................................18
 5.8 Corporate Action........................................................................................18

5.9     Management................................................................................................................18

ARTICLE 6    Provisions Governing Distributions and General Provisions ................................18
6.1     Distributions .............................................................................................................18
6.2     Method of Distribution .............................................................................................18
6.3     Notices ......................................................................................................................20
6.4     Default .......................................................................................................................20
6.5     Cramdown Provision and Confirmation Request ......................................................20

ARTICLE 7    Executory Contracts..............................................................................................20
7.1     Rejection of Executory Contracts and Unexpired Leases.........................................20
7.2     Rejection Damages Bar Date ....................................................................................21

ARTICLE 8    Causes of Action....................................................................................................21
8.1     Retention, Enforcement and Waiver of Claims ........................................................21
8.2     Powers.......................................................................................................................21

ARTICLE 9    Provisions for Resolving and Treating Disputed Claims........................................21
9.1     Objections to Claims; Prosecution of Disputed Claims ...........................................21
9.2     Late Filed Claims......................................................................................................21
9.3     Status of Distributions Pending Allowance ..............................................................22
9.4     Reserve for Disputed Unsecured Claims ..................................................................22
9.5     Estimation Period......................................................................................................22
9.6     Distributions After Allowance ..................................................................................22

ARTICLE 10    Retention of Jurisdiction......................................................................................22

ARTICLE 11    Miscellaneous ......................................................................................................24
11.1     Choice of Law.........................................................................................................24
11.2     Payment of Statutory Fees ......................................................................................24
11.3     No Discharge of Debtor ..........................................................................................24
11.4     Severability..............................................................................................................24
11.5     Binding Effect.........................................................................................................24
11.6     Withholding and Reporting Requirements ..............................................................24
11.7     Automatic Stay........................................................................................................24
11.8     Modification and Amendments ...............................................................................25
11.9     Destruction of Records ...........................................................................................25
11.10     Liability in Connection with Plan .........................................................................25

Mid-Atlantic Energy Concepts, Inc. d/b/a Atlantic Energy Concepts, the Debtor and Debtor-in-Possession (as such terms are hereinafter defined), hereby proposes this Liquidating Plan (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq.

## ARTICLE I
### Definitions, Rules of Interpretation, and Computation of Time

A.      **Scope of Definitions.**  For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B of this Plan.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules.

B.      **Definitions**.

1.1     **"Accrued"** means an expense incurred but not yet billed for nor paid.

1.2     **"Administrative Claim"** means a Claim incurred by the Debtor or its estate on or after the Petition Date but before the Effective Date for a cost or expense of administration of this Case allowable under § 503(b) of the Bankruptcy Code and entitled to priority under § 507(a)(2) of the Bankruptcy Code.

1.3     **"Administrative Claimant"** means the holder of an Administrative Claim.

1.4     **"Affiliate"** means any "affiliate" as that term is defined in § 101(2) of the Bankruptcy Code.

1.5     **"Allied"** means Allied World National Assurance Company.

1.6     **"Allowance Date"** means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

1.7     **"Allowed"** The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this case as of the Confirmation Date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor or any other party in interest; (b) is set forth in a Proof of Claim or Interest properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof), and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

1.8     **"Allowed Claim"** means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules (including any amendments thereto) as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the

Bankruptcy Code, the Bankruptcy Rules or Orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim.  Unless otherwise specified herein, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

1.9    **"Allowed Interest"** shall mean an Interest (a) in respect to which a proof of interest has been filed with the Court within the applicable period of limitation fixed by Bankruptcy Rule 3003 or (b) scheduled in the list of equity security holders prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

1.10    **"Assets"** means all of the Debtor's property, real and personal, tangible and intangible, including, without limitation, Cash, accounts receivable, goods, equipment, inventory, chattel paper, documents, instruments, money, fixtures, contract rights, general intangibles, insurance proceeds, tax refunds, Causes of Action, claims and rights of any kind, wherever situated, together with the proceeds thereof.

1.11    **"Atlantic Energy Note"** means the Line of Credit Note dated August 5, 2004, as amended, among Santander, the Debtor and MBR in the original principal amount of $300,000 which was subsequently increased to $1,000,000.

1.12    **"Avoidance Actions"** means actions of the Debtor against Persons arising under the Bankruptcy Code, including, §§ 544, 545, 547, 548 through 551 and 553 thereof, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such actions.

1.13    **"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

1.14    **"Bankruptcy Court" or "Court"** means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

1.15    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to this Case or proceeding therein, and the Local Rules of the Bankruptcy Court, as applicable to this Case or proceeding therein, as the case may be.

1.16    **"Bar Date"** means the deadline set by the Bankruptcy Court for filing proofs of claim or interests in this Case.  For pre-Petition Claims (other than those of governmental units) and Interests, the Bar Date fixed by Order of the Court was **September 14, 2018**.  For pre-Petition Claims of governmental units, in accordance with § 502(b)(9) of the Bankruptcy Code, the Bar Date

is 180 days from the date of the Order for relief.  The Order for relief was July 20, 2018.

1.17    **"Brendon and Celine"** means Brendon and Celine Field.

1.18    **"Business Day"** means any day other than a Saturday, Sunday, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks in Philadelphia, Pennsylvania are required or authorized to close.

1.19    **"C&F"** means United States Fire Insurance Company a/k/a Crum & Forster.

1.20    **"Case"** means, the above captioned Case presently captioned, In re Mid-Atlantic Energy Concepts, Inc. d/b/a Atlantic Energy Concepts, et. al, under Case No. 18-14790(REF).

1.21    **"Cash"** means legal tender of the United States of America and equivalents thereof.

1.22    **"Causes of Action"** means any and all actions of the Debtor (excluding Avoidance Actions), proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, unless otherwise waived or released by the Debtor.

1.23    **"Claim"** means a claim, whether or not asserted, as defined in §101(5) of the Bankruptcy Code against the Debtor and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

1.24    **"Claimant"** means a person or entity holding a Claim or Interest (including, his, her or its successors, assigns, heirs, executors, or personal representatives).

1.25    **"Class"** means a category of holders of Claims or Interests, as set forth in Article II of this Plan, pursuant to 11 U.S.C. § 1122.

1.26    **"Collateral"** means any property or interest in property of the Estate which is subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.27    **"Complaint"** means the complaint to be filed by the Debtor, as plaintiff, against SummitBridge, Allied, Hartford, and C&F, as defendants for a determination of the extent, priority, and validity of liens held by each of these defendants in connection to the Sale Proceeds and to determine the amount of their respective claims.  As set forth in the Plan, this Complaint is only filed in the event that SummitBridge, Allied, Hartford or C&F file an objection to confirmation of the Plan or cast a secured or unsecured ballot rejecting the Plan.

1.28    **"Confirmation Date"** means the date of entry of the Confirmation Order.

1.29    **"Confirmation Hearing"** means the hearing at which the Court considers confirmation of this Plan.

1.30    **"Confirmation Order"** means the Order of the Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.31    **"Creditor"** means the holder of a Claim against the Debtor.

1.32    **"Debtor"** means Mid-Atlantic Energy Concepts, Inc. d/b/a Atlantic Energy Concepts.

1.33    **"Debtor-in-Possession"** means the Debtor in its capacity as a debtor-in-possession in this Case and with the status and rights conferred pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

1.34    **"Deficiency Claim"** means, with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is partially secured because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of the Collateral securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's estate's interest in the Collateral securing the Claim.

1.35    **"Disallowed Claim" or "Disallowed Interest"** means a Claim or any portion thereof, or an Interest or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a proof of claim or interest bar date has been established but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.36    **"Disclosure Statement"** means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code.

1.37    **"Disputed Claim" or "Disputed Interest"** means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest or Disallowed Interest, as the case may be, and includes, without limitation, Claims or Interests that (a) have not been Scheduled by the Debtor or have been Scheduled at zero, or have been Scheduled as unknown, contingent, unliquidated or disputed, whether or not such Claims or Interests are the subject of a proof of claim or proof of interest in the Bankruptcy Court, (b) are the subject of a proof of claim or interest that differs in nature, amount or priority from the Schedules, or

4

(c) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.38    **"Disputed Unsecured Claim Reserve"** means, in the event there exists any disputed unsecured claim on or after the Effective Date, Cash to be set aside by the Debtor pursuant to Section 10.4 of the Plan in an amount sufficient to pay the Distributions to all disputed unsecured claims at the time such Distributions are made in accordance with the provisions of the Plan, if such disputed unsecured claims become Allowed Claims.

1.39    **"Distribution"** means any payment by the Debtor to a Creditor on account of a Claim.

1.40    **"Distribution Account"** means the DIP bank accounts maintained by the Debtor into which all the proceeds from the liquidation of its Assets have been deposited.

1.41    **"Distribution Date"** means the date, selected by the Debtor occurring as soon as practicable after the Effective Date, upon which Distributions to holders of Allowed Claims entitled to receive Distributions under the Plan shall commence.

1.42    **"Effective Date"** means the first Business Day after the date the Confirmation Order becomes a Final Order. However, at the option of the Debtor, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.

1.43    **"Entity"** shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.44    **"Estate"** means the bankruptcy estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

1.45    **"Exhibit"** means an exhibit attached to this Plan.

1.46    **"Exhibit Filing Date"** means the date on which Exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be at least five days prior to the voting deadline for this Plan or such later date as may be approved by the Bankruptcy Court.

1.47    **"Existing Equity Securities"** means all equity interests in the Debtor or Claim thereto existing prior to the Effective Date, all options, warrants and rights (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable or otherwise, to acquire any of the foregoing.

1.48    **"Fee Claim"** means a claim under §§ 328, 330(a) or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in this Case.

1.49    **"Final Order"** means an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review reconsideration or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review reconsideration or

rehearing has expired.

1.50    **"General Unsecured Claim"** means a Claim that does not fall within another Class of Claims.

1.51    **"Guaranty Obligations"** means the obligations arising from (i) the unlimited surety agreement given by the Debtor to Santander dated August 4, 2004, by which it agreed absolutely and unconditionally to guaranty and become surety for the payment and performance of the obligations of MBR under the MBR Note, and (ii) a guaranty dated August 23, 2006, given by Debtor to Santander, by which Debtor agreed, irrevocably and unconditionally to guaranty payment and performance of the LaraLynn Note.

1.52    **"Governmental Unit"** means a "governmental unit" as that term is defined in § 101(26) of the Bankruptcy Code.

1.53    **"Hartford"** means Hartford Fire Insurance Company.

1.54    **"Impaired"** means "impaired" within the meaning of § 1124 of the Bankruptcy Code.

1.55    **"Impaired Class"** means any Class of Claims which is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.56    **"Insider"** means any "insider" as that term is defined in paragraphs (B), (E) or (F) of § 101(31) of the Bankruptcy Code.

1.57    **"Interest"** means (a) the legal, equitable, contractual and other rights (whether fixed or contingent, matured or unmatured, disputed or undisputed) of any Person with respect to Existing Equity Securities or any other equity securities of the Debtor as defined in Section 101(16) of the Bankruptcy Code and (b) the legal, equitable, contractual and other rights, (whether fixed or contingent, matured or unmatured, disputed or undisputed), of any Person to purchase, sell, subscribe to, or otherwise acquire or receive (directly or indirectly) any of the foregoing.

1.58    **"Ken and Lynn"** means Kenneth and Lynn Field.

1.59    **"KBF"** means the KBF Enterprises, LP.

1.60    **"KBF Note"** means the KBF Term Note dated August 5, 2004 between Santander and KBF in the original principal amount of $830,500.00.

1.61    **"LaraLynn Debtor"** means LaraLynn, L.P.

1.62    **"LaraLynn Note"** means the Construction Note dated August 23, 2006, as amended, between Santander and the LaraLynn Debtor in the principal amount of $1,120,000.00.

1.63    **"Lien"** has the meaning set forth in § 101 (37) of the Bankruptcy Code, and shall include any replacement and super priority liens granted by the Bankruptcy Court.

6

1.64    **"MBR"** means MBR Construction Services, Inc.

1.65    **"MBR Note"** means the Group Term Note dated August 5, 2004, as amended, between Santander and MBR in the original principal amount of $1,000,000 which was subsequently increased to $6,000,000.

1.66    **"Person"** means a person within the meaning of § 101(41) of the Bankruptcy Code.

1.67    **"Petition"** means the Petition for Relief filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code commencing each proceeding.

1.68    **"Petition Date"** means **July 20, 2018**, the date upon which the Debtor filed its Petition.

1.69    **"Plan"** means this Plan of Liquidation, as it may be further amended, modified or supplemented from time to time, and any exhibits and schedules thereto.

1.70    **"Plan Proponent"** means the Debtor.

1.71    **"Priority Non-Tax Claim"** means any Claim or a portion of a Claim for which priority is asserted under § 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

1.72    **"Priority Tax Claim"** means any Claim of a governmental unit of the kind specified in §§ 502(i) and 507(a)(8) of the Bankruptcy Code.

1.73    **"Pro Rata"** means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class (including Disputed Claims, but excluding Disallowed Claims).

1.74    **"Professional Persons"** means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with § 327 of the Bankruptcy Code and to be compensated for services rendered to the Debtor prior to the Effective Date, pursuant to §§ 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code.

1.75    **"Rejection Claim"** means any claim that results from the rejection of any executory contract or unexpired lease by the Debtor by a Final Order.

1.76    **"Retained Actions"** means all Causes of Action which the Debtor may hold against any Person, including, without limitation, (a) any Causes of Action brought prior to the Confirmation Date, (b) any Causes of Action against any Persons for failure to pay for products or services provided or rendered by the Debtor, (c) any Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course

of the Debtor's business, and (d) any Causes of Action seeking to determine the extent, priority and validity of the liens held by SummitBridge, Allied, Hartford and C&F in the Sale Proceeds.

1.77    **"Sale"** means the sale of substantially all of the Debtor's assets to Schaedler/Yesco Distribution, Inc. approved by Order of the Bankruptcy Court dated August 23, 2018.

1.78    **"Sale Proceeds"** means the sale proceeds received by the Debtor from the sale of substantially all of the Debtor's assets to Schaedler/Yesco Distribution, Inc. net of distributions authorized by Orders of the Court including, payment of quarterly statutory fees to the Office of the United States Trustee.  As of January 31, 2019, the amount in the Distribution Account was $310,944.56.

1.79    **"Santander"** means Santander Bank, N.A.

1.80    **"SummitBridge"** means SummitBridge National Investments, VI, LLC, as successor in interest to Santander as set forth in (i) the Transfer of Claim other than for Security filed by Summit Bridge on January 29, 2019 (Court's Claims Register for Debtor, No. 165) and (ii) the Transfer of Claim other than for Security filed by Summit Bridge on January 29, 2019 (Court's Claim Register for LaraLynn Debtor, docket No. 44).

1.81    **"Scheduled"** means, with respect to any Claim or Interest, the status, priority, and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.82    **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs filed in this Case by the Debtor pursuant to Bankruptcy Rule 1007, as such schedules or statements have been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.83    **"Secured Claim"** means any Claim, to the extent reflected in the Schedules or a proof of claim as a Secured Claim, which is secured by a Lien on Collateral, to the extent of the value of such Lien after giving effect to all Liens senior in priority, as determined in accordance with § 506(a) of the Bankruptcy Code, or, in the event such Claim is subject to permissible setoff under § 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.84    **"Sureties"** means Allied, Hartford, and C&F.

1.85    **"Unimpaired"** means, with respect to a Class of Claim, that such Class is not Impaired.

1.86    **"Unimpaired Class"** means any Class of Claim which is not impaired within the meaning of § 1124 of the Bankruptcy Code.

1.87    **"Unsecured Claim"** means any Claim, including a Rejection Claim or a Deficiency Claim, arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim.

C.    **Rules of Interpretation**.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, Articles of Incorporation, Bylaws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in §102 of the Bankruptcy Code will apply.

D.    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

E.    **References to Monetary Figures**.  All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

F.    **Exhibits**.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103 (Attention: Aris J. Karalis, Esquire), counsel to the Debtor, or by downloading such Exhibits from the Court's website at http://ecf.paeb.uscourts.gov.  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

**ARTICLE II**
**Classification of Claims and Interests**

2.1  **Summary of Claims**.  The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 4 of this Plan) and Interests for all purposes, including voting, confirmation and distribution, pursuant to this Plan.

| Class | Description | Status | Voting Rights |
|-------|-------------|--------|---------------|
| 1 | Class 1 consists of the Secured Claim of Santander – Atlantic Energy Note. | Not Impaired | Deemed to accept |
| 2 | Class 2 consists of the Secured Claim of SummitBridge – Guaranty Obligations;. | Impaired | Entitled to vote |
| 3 | Class 3 consists of the Secured Claim of Allied. | Impaired | Entitled to vote |
| 4 | Class 4 consists of the Secured Claim of Hartford. | Impaired | Entitled to vote |
| 5 | Class 5 consists of the Secured Claim of C&F. | Impaired | Entitled to vote |
| 6 | Class 6 consists Priority Non-Tax Claims | Not impaired | Deemed to accept |
| 7 | Class 7 consists of General Unsecured Claims | Impaired | Entitled to vote |
| 8 | Class 8 consists of Interests | Impaired | Deemed to reject |

2.2    **Classification of Claims**.  The Claims and Interests against the Debtor shall be classified as specified above (except for Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 4 of this Plan).  Consistent with § 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.

2.2.1    Classes 1 and 6 are unimpaired by the Plan and Holders of these Claims are conclusively presumed to have accepted the Plan.  Classes 2, 3, 4, 5, and 7 are impaired by the Plan, and holders of Claims in these Classes shall be entitled to vote to accept or reject the Plan.  Class 8 is impaired by the Plan because holders of Interests in this Class will not retain or receive any property under the Plan on account of such Interests.  Therefore, this Class is deemed not to have accepted the Plan.

2.2.2    The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding an Allowed Claim or an Allowed Interest may have in or against the Debtor or its property.  All Distributions under the Plan will be tendered to the Person holding the Allowed Claim or Allowed Interest in accordance with the terms of this Plan.  Except as specifically set forth in this Plan, no Distributions will be made and no rights will be retained on account of any Claim and any Interest that is not an Allowed Claim or an Allowed Interest.

2.3    **Administrative Claims and Priority Tax Claims**.  As provided in § 1123(a)(1) of

the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article IV of this Plan.

## ARTICLE III
## Treatment of Classes of Claims

3.1    **Class 1.**    **Secured Claim of Santander – Atlantic Energy Note**. Class 1 is not impaired. The treatment and consideration to be received by Santander on account of its Allowed Secured Claim shall be in full settlement, satisfaction, and release of all of its respective claims and liens.

3.1.1.    Amount of Allowed Secured Claim of Santander in Connection to Atlantic Energy Note. As of the Petition Date, the unpaid aggregate liability owed to Santander under the Atlantic Energy Note was $1,045,544.25.

3.1.2.    Post-Petition Payments to Santander. On August 30, 2018, in accordance with the Court's Order dated August 23, 2018 approving the Sale, Santander was paid the amount of $1,051,759.75, on account of its secured claim against the Debtor. This payment was comprised of $1,045,544.25 (amount due as of Petition Date), plus accrued interest until time of payment of $9,573.50, less $3,358.00 in adequate protection payments paid by Debtor). No further payments are due or payable to Santander or SummitBridge under Class 1 on account of the Atlantic Energy Note.

3.2    **Class 2.**    **Secured Claim of SummitBridge - Guaranty Obligations**. Class 2 is impaired. The treatment and consideration to be received by SummitBridge Investments VI, as successor to Santander on account of its Allowed Secured Claim shall be in full settlement, satisfaction, and release of all of its respective claims and liens.

3.2.1    Amount of Allowed Secured Claim of SummitBridge in Connection to the Guaranty Obligations. As of the Petition Date, the unpaid aggregate liability owed to SummitBridge in connection with the Guaranty Obligations was $3,432,804.98 ($2,719,222.57 in connection with the MBR Note and $713,582.41 in connection with the LaraLynn Note). The    UCC-1    Financing Statement filed by SummitBridge against the Debtor on 8/11/2004 (no. 20040857475)[1] creates a security interest in the Sale Proceeds. Since there are no prior security interests, SummitBridge holds a first lien in the Sale Proceeds.

3.2.2.    Post-Petition Payments to Santander and SummitBridge.

3.2.2.1.    MBR Note. Post-Petition, Santander received post-petition payments from MBR in the amount of $79,900.42 (proceeds from auction sale of MBR assets) and excess proceeds from the sale of real property owned by KBF in the amount of $1,624,649.57, totaling $1,704,549.99. These proceeds were applied against the MBR Note, leaving a balance due

---

[1] Santander filed UCC-3 Continuation Statements on July 15, 2009 (Statement No. 2009071508885) and May 20, 2014 (Statement No. 2014052007350).

of $1,014,672.58. No further payments are due on the KBF Note.

        3.2.2.2.        LaraLynn Note. Post-Petition, Santander and SummitBridge Investments VI, have been paid all accrued interest from the Petition Date to February 28, 2019 on account of the LaraLynn Note. By Order dated February 8, 2019, the LaraLynn Debtor confirmed its Plan of Reorganization dated November 16, 2018, as modified on February 5, 2019 (the "LaraLynn Plan"). The effective date of the LaraLynn Plan occurred on March 1, 2019. The principal balance of the LaraLynn Note is $713,582.41.

        3.2.3.  Payment of Allowed Secured Claim.

        3.2.3.1.        If SummitBridge, Allied, Hartford and C&F vote in favor of this Plan and do not object to its confirmation, then, the Allowed Class 2 Secured Claim of SummitBridge shall be paid the balance in the Distribution Account after (a) payment of Allowed Fee Claims of Debtor's counsel, (b) payment of Allowed Priority Tax Claims, (c) payment of Allowed Class 6 Priority Claims, if any, and (d) payment of the amount of $50,000 on a Pro-Rata basis to holders of Allowed Class 7 Claims.

        3.2.3.1.        If SummitBridge, Allied, Hartford or C&F do not vote in favor of this Plan or file an objection to this Plan, then the Debtor will file the Complaint and the Allowed Class 2 Secured Claim of Summit Bridge shall be paid as determined by Final Order of the Bankruptcy Court in connection with the claims asserted by the Debtor in the Complaint against SummitBridge, Allied, Hartford, and C&F, unless otherwise agreed among the Debtor, SummitBridge, Allied, Hartford and C&F and approved by the Court and after (a) payment of Allowed Fee Claims of Debtor's counsel, (b) payment of Allowed Priority Tax Claims, and (c) payment of Allowed Class 6 Priority Claims, if any.

        3.2.4  Retention of Liens. SummitBridge shall retain its liens in the same priority, extent and validity as existed on the Petition Date in the Assets of the Debtor until SummitBridge receives the treatment identified herein.

        3.2.5  Deficiency Claim. Any Deficiency Claim held by SummitBridge in connection to its Allowed Secured Claim shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan.

        3.2.6  Extinguishment of Lien. Upon payment of the SummitBridge Allowed Secured Claim as provided herein, the Lien of SummitBridge against the Debtor's assets shall be extinguished and shall effect a full and final satisfaction of such claim such that the Debtor shall have no liability on account of such Class 2 Claim.

    3.3    **Class 3.**        **Secured Claim of Allied**. Class 3 is impaired. The treatment and consideration to be received by Allied on account of its Allowed Secured Claim shall be in full settlement, satisfaction, and release of all of its respective claims and liens.

        3.3.1.  Amount of Allowed Secured Claim of Allied. Allied filed a proof of claim in this Bankruptcy Case (POC No. 17) asserting a secured claim in the amount of $400,000.00 arising

from an indemnity agreement for surety losses incurred by Allied on behalf of bonds issued on behalf of the Debtor and MBR. The Debtor asserts that the amount of the Allied Claim is contingent and unliquidated and requires Allied to set forth in detail the actual net amount that Allied paid on account of the Debtor. Further, the Debtor asserts that the UCC-1 Financing Statement filed by Allied on 12/22/2016 (no. 2016122300255) against the Debtor is later in time than the UCC-1 Financing Statement filed by SummitBridge on 8/11/2004 (no. 20040857475)[2]. Therefore, Allied holds a 2nd priority lien in the Sale Proceeds. Since the Sale Proceeds are less than the amount of the SummitBridge Allowed Class 2 Claim, the entire Allied Secured Claim is a Deficiency Claim.

### 3.3.2. Payment of Allowed Secured Claim.

3.3.2.1. If SummitBridge, Allied, Hartford and C&F vote in favor of this Plan and do not object to its confirmation, then, the Allowed Class 3 Secured Claim of Allied shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan and shall be entitled to share on a Pro-Rata basis in the $50,000.00 to be paid under section 3.7.1. of the Plan.

3.3.2.2.        If SummitBridge, Allied, Hartford or C&F do not vote in favor of this Plan or file an objection to this Plan, then the Debtor will file the Complaint and the Allowed Class 3 Secured Claim of Allied shall be paid as determined by Final Order of the Bankruptcy Court in connection with the claims asserted by the Debtor in the Complaint against SummitBridge, Allied, Hartford, and C&F, unless otherwise agreed among the Debtor, SummitBridge, Allied, Hartford and C&F and approved by the Court. In such instance, any Deficiency Claim held by Allied in connection to its Allowed Secured Claim shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan and the provisions of section 3.7.1. of the Plan including the payment of $50,000.00 from the Distribution Account will not be applicable or enforceable.

3.4    **Class 4.**    **Secured Claim of Hartford**. Class 4 is impaired. The treatment and consideration to be received by Hartford on account of its Allowed Secured Claim shall be in full settlement, satisfaction, and release of all of its respective claims and liens. The Allowed Class 4 Claim of Hartford shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan.

3.4.1.        Amount of Allowed Secured Claim of Hartford. Hartford filed a proof of claim in this Bankruptcy Case (POC No. 20) asserting a contingent secured claim in the amount of $41,686,160.00 (liquidated amount of $9,781,416) arising from an indemnity agreement for surety losses incurred by Hartford on behalf of bonds issued on behalf of the Debtor and MBR. The Debtor asserts that the amount of the Hartford Claim is contingent and unliquidated and requires Hartford to set forth in detail the actual net amount that Hartford paid on account of the Debtor. Further, the Debtor asserts that the UCC-1 Financing Statement filed by Hartford on 7/31/17 (no. 2017071301721) against the Debtor is later in time than the UCC-1 Financing Statement filed by

---

[2] Santander filed UCC-3 Continuation Statements on July 15, 2009 (Statement No. 2009071508885) and May 20, 2014   (Statement No. 2014052007350).

SummitBridge on 8/11/2004 (no. 20040857475)[3] and Allied on 12/22/2016 (no. 2016122300255). Therefore, Hartford holds a third priority lien in the Sale Proceeds. Since the Sale Proceeds are less than the amount of the SummitBridge Allowed Class 2 Claim, and the Allied Class 3 Claim, the entire Hartford Secured Claim is a Deficiency Claim.

### 3.4.2.  Payment of Allowed Secured Claim.

3.4.2.1.       If SummitBridge, Allied, Hartford and C&F vote in favor of this Plan and do not object to its confirmation, then, the Allowed Class 4 Secured Claim of Hartford shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan and shall be entitled to share on a Pro-Rata basis in the $50,000.00 to be paid under section 3.7.1. of the Plan.

3.4.2.2.       If SummitBridge, Allied, Hartford or C&F do not vote in favor of this Plan or file an objection to this Plan, then the Debtor will file the Complaint and the Allowed Class 4 Secured Claim of Hartford shall be paid as determined by Final Order of the Bankruptcy Court in connection with the claims asserted by the Debtor in the Complaint against SummitBridge, Allied, Hartford, and C&F, unless otherwise agreed among the Debtor, SummitBridge, Allied, Hartford and C&F and approved by the Court.  In such instance, any Deficiency Claim held by Allied in connection to its Allowed Secured Claim shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan and the provisions of section 3.7.1. of the Plan including the payment of $50,000.00 from the Distribution Account will not be applicable or enforceable.

3.5    **Class 5.**      **Secured Claim of C&F**.  Class 5 is impaired.  The treatment and consideration to be received by C&F on account of its Allowed Secured Claim shall be in full settlement, satisfaction, and release of all of its respective claims and liens.  The Allowed Class 5 Claim of C&F shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan.

3.5.1.  Amount of Allowed Secured Claim of C&F.  C&F filed a proof of claim in this Bankruptcy Case (POC No. 19) asserting a secured claim in the amount of $13,671,532.00 arising from an indemnity agreement for surety losses incurred by C&F on behalf of bonds issued on behalf of the Debtor and MBR.  The Debtor asserts that the amount of the C&F Claim is contingent and unliquidated and requires C&F to set forth in detail the actual net amount that C&F paid on account of the Debtor.  Further, the Debtor asserts that the UCC-1 Financing Statement filed by C&F on 4/2/18 (no. 2018040400810) against the Debtor is later in time than the UCC-1 Financing Statement filed by SummitBridge on 8/11/2004 (no. 20040857475)[4], Allied on 12/22/2016 (no. 2016122300255), and Hartford on 7/31/17 (no. 2017071301721).  Therefore, C&F holds a 4th priority lien in the Sale Proceeds.  Since the Sale Proceeds are less than the amount of the

---

[3]  Santander filed UCC-3 Continuation Statements on July 15, 2009 (Statement No. 2009071508885) and May 20, 2014 (Statement No. 2014052007350).
[4]  Santander filed UCC-3 Continuation Statements on July 15, 2009 (Statement No. 2009071508885) and May 20, 2014 (Statement No. 2014052007350).

SummitBridge Allowed Class 2 Claim, Allied Class 3 Claim, Hartford Class 5 Claim, the entire C&F Secured Claim is a Deficiency Claim.

3.5.2.   Payment of Allowed Secured Claim.

3.5.2.1.      If SummitBridge, Allied, Hartford and C&F vote in favor of this Plan and do not object to its confirmation, then, the Allowed Class 5 Secured Claim of C&F shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan and shall be entitled to share on a Pro-Rata basis in the $50,000.00 to be paid under section 3.7.1. of the Plan.

3.5.2.2.      If SummitBridge, Allied, Hartford or C&F do not vote in favor of this Plan or file an objection to this Plan, then the Debtor will file the Complaint and the Allowed Class 5 Secured Claim of C&F shall be paid as determined by Final Order of the Bankruptcy Court in connection with the claims asserted by the Debtor in the Complaint against SummitBridge, Allied, Hartford, and C&F, unless otherwise agreed among the Debtor, SummitBridge, Allied, Hartford and C&F and approved by the Court.  In such instance, any Deficiency Claim held by Allied in connection to its Allowed Secured Claim shall be treated as a general unsecured claim and receive the treatment set forth in Class 7 of this Plan and the provisions of section 3.7.1. of the Plan including the payment of $50,000.00 from the Distribution Account will not be applicable or enforceable.

3.6    **Class 6.**      **Priority Non-Tax Claims**.  Class 6 is not impaired.  Unless the holder of an Allowed Class 6 Priority Claim and the Debtor agree to a different treatment, the Debtor shall pay each holder of an Allowed Class 6 Priority Claim in full, in cash, without interest, from the Distribution Account on the later of the Effective Date or the Allowance Date.

3.7    **Class 7.**      **General Unsecured Claims.**  Class 7 is impaired.  As soon as reasonably practicable after (a) full payment of Allowed Administrative Claims including Fee Claims and Priority Tax Claims, (b) the determination of the Complaint, in the event that holders of Class 2, Class 3, Class 4 and Class 5 Claims have not voted in favor of the Plan or objected to confirmation of the Plan, (c) payment of Allowed Class 2, Class 3, Class 4, Class 5, and Class 6 Claims, the Debtor, in accordance with the Plan, shall Distribute on a Pro-Rata basis the funds remaining in the Distribution Account to holders of Allowed Class 7 Claims, if any, as and when funds are available for such purpose.  No interest will be paid on account of Class 7 Claims.  Class 7 shall include the Deficiency Claims of holders of Allowed Class 2, Class 3, Class 4, and Class 5 Claims.  No portion of any Class 7 Claim shall be allowed to the extent that it is for post-petition interest or other similar post-petition charges.

3.7.1.      Additional Distribution to Holders of Allowed Class 7 Claims. Subject to the satisfaction of all the contingencies identified at the end of this section 3.7.1., each holder of an Allowed Class 7 Claim shall receive a Pro-Rata share of $50,000 from the Distribution Account within thirty (30) days after the later of the Effective Date or the allowance of the respective Class 7 Claim.  The payment of a Pro-Rata share of $50,000 from the Distribution Account contained in this section 3.7.1 is contingent upon all of the following:

3.7.1.1.        SummitBridge, Allied, Hartford and C&F not filing an objection to confirmation of this Plan;

3.7.1.2.        SummitBridge voting its Class 2 and Class 7  ballots in favor of the Plan;

3.7.1.3        Allied voting its Class 3 and Class 7 ballots in favor of the Plan;

3.7.1.4.        Hartford voting its Class 4 and Class 7 ballots in favor of the Plan;

3.7.1.5.        C&F voting its Class 5 and Class 7 ballots in favor of the Plan; and

3.7.1.6.        Class 7 accepting the Plan.

If all of the above stated contingencies are not satisfied, the provisions of this section 3.7.1. shall not be applicable or enforceable.

3.8    **Class 8.**    **Interest Holders.**  Class 8 is impaired.  Class 8 Interests in the Debtor shall be cancelled and extinguished as of the Effective Date, and holders of such Interests shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Interests.

**ARTICLE IV**
**Treatment of Unclassified Claims**

4.1    **Administrative Claims**.

4.1.1    Time for Filing Administrative Claims.  The holder of an Administrative Claim other than (i) a Fee Claim or (ii) a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Debtor and its counsel, a motion or request for the payment of such Administrative Claim within thirty (30) days after the Effective Date.  Such motion or request must include, at minimum, (i) the name of the holder of the claim, (ii) the amount of the claim, and (iii) the basis of the claim.  Furthermore, all persons and entities asserting Administrative Claims, which do not fall within Section 4.1 of the Plan, shall file a motion or request for the payment of such administrative claim within thirty (30) days of the Effective Date, or be forever barred from asserting any such Administrative Claim.  Failure to file a motion or request for payment timely and properly shall result in the Administrative Claim being forever barred.

4.1.2    Time for Filing Fee Claims.  Each professional person who holds or asserts an Administrative Claim that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court a final fee application within thirty (30) days after the Effective Date.  Failure to timely file a final fee application shall result in the Fee Claim being forever barred.

4.1.3    Allowance of Administrative Claims.  An Administrative Claim with respect to which notice is required and which has been properly filed pursuant to Section 4.1 of this Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Claim.  If an objection is filed within such thirty (30) day period, the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  An Administrative Claim that is a Fee Claim, and with respect to its fee application has been timely filed pursuant to Section 4.1.2 of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

4.1.4    Payment of Allowed Administrative Claim.  Each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim as soon as reasonably practicable after the Effective Date, (ii) such other treatment as may be agreed upon in writing by the Debtor, and such holder, or (iii) as may be otherwise ordered by the Court, provided that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business.

4.1.5    Professional Fees Incurred After the Effective Date.  Professional fees incurred by the Debtor after the Effective Date will be paid by the Debtor after review and approval and, thereafter, can be paid without further Order of the Court.  Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.

4.2    Treatment of Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim that is not also a Class 6 Claim shall receive, at the sole option of the Debtor (i) the amount of such holder's Allowed Claim on the Effective Date; or (ii) such other treatment as may be agreed upon in writing by the Debtor and such Creditor.

4.3    No Liability for Certain Tax Claims.  To the extent that any Claim asserted by a governmental taxing authority seeks recovery of a fine or penalty against the Debtor, that portion of such Claim, if Allowed, which represents such fine or penalty, shall be treated as a General Unsecured Claim.

**ARTICLE V**
**Provisions For Execution of The Plan**

5.1    **Retention of Assets by the Estate**.  The assets of the Debtor's Estate shall not vest in the Debtor, but shall continue to vest in the Estate of the Debtor after the Effective Date.  The Debtor shall administer the Assets in possession of the Estate after the Effective Date for the benefit of its Estate.

5.2    **Disposition of Debtor's Assets**.  The Debtor, in the name of the Debtor's Estate, shall continue in possession of any remaining Assets after the Effective Date for the purpose of liquidating and distributing such Assets in accordance with the terms of this Plan.

5.3    **Funds**.  The funds to effect the payments under this Plan for the Debtor will be from (i) its Distribution Account and (ii) any other funds that may be received by the Debtor or its estate

after the Effective Date.

5.4 **Documents**. Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan. Upon the occurrence of the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

5.5 **Disbursements and Investment of Funds**. All Distributions under this Plan shall be made by the Debtor. The Debtor shall invest funds from the liquidation of its Assets pending Distribution to holders of Allowed Claims consistent with § 345(a) of the Bankruptcy Code. The Debtor shall be authorized to use the funds in the Distribution Account to pay for post-confirmation operating expenses incurred by the Debtor and its professionals.

5.6 **Final Decree.** After consummation of the Plan and as soon as there are no pending matters for which the case must remain open, the Debtor shall file a motion to close the Case and request that a final decree be issued.

5.7 **Winding Up Affairs**. Following the Effective Date, Debtor shall not engage in any business activities or take any actions, except those necessary to consummate the Plan and wind up the affairs of the Debtor.

5.8 **Corporate Action**. Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and will be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor.

5.9 **Management**. Post-petition, the officers and directors of the Debtor consist of Kenneth Field, and Brendon Field who will continue in these positions after the Effective Date without compensation solely to oversee the disbursements under this Plan.

## ARTICLE VI
### Provisions Governing Distributions and General Provisions

6.1 **Distributions**. Distributions pursuant to this Plan shall be made by the Debtor as provided herein and shall be made, unless otherwise provided herein, on the Effective Date, or as soon as practicable thereafter, or as may be otherwise ordered by the Court.

6.2 **Method of Distribution.**

6.2.1 In General. The Debtor shall make all Distributions in the priorities designated under the Plan from available cash in the Debtor's Distribution Account.

6.2.2 Transmittal of Distributions. Except as otherwise agreed with the holder of an

Allowed Claim in respect thereof or provided in the Plan, any property to be distributed on account of an Allowed Claim, shall be distributed by mail upon compliance by the holder with provisions of the Plan to (i) the latest mailing address filed with the Court for the holder of an Allowed Claim entitled to a Distribution, (ii) the latest mailing address filed with the Court for a holder of a filed power of attorney designated by the holder of such Claim to receive Distributions, (iii) the latest mailing address filed with the Court for the holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed with the Court, the mailing address reflected on the Schedules or in the Debtor's books and records.

6.2.3    Time Bar to Cash Payments. Checks issued by the Debtor with respect to Allowed Claims will be null and void if not cashed within ninety (90) days of the date of their issuance.  Requests for reissuance of any check shall be made to the Debtor by the holder of the Allowed Claim with respect to which the check originally was issued.  Any claim with respect to such a voided check must be made on or before ninety (90) days after the date of issuance of the check. After the date, all claims with respect to void checks will be discharged and forever barred, and the cash, including interest earned, if any, shall be revested in the Debtor's Estate.

6.2.4    Distributions of Unclaimed Property. Any Distribution of property (Cash or otherwise) under the Plan which is unclaimed after ninety (90) days following any Distribution date shall revert back to the Debtor's Estate, and such Distribution, together with any interest earned thereon, shall become an asset to be distributed in accordance with the provisions of the Plan. Upon such reversion, the holder of such Claim or their successors and assigns shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

6.2.5    Means of Cash Payment. Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.2.6    Setoffs. The Debtor may, but will not be required to, set off against any Claim and any payments to be made pursuant to the Plan with respect to the Claim, any claims, rights and Causes of Action, of any nature whatsoever, that the Debtor may have had against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor of any such claims, rights and Causes of Action that the Debtor's Estate may possess against such Claimant.

6.2.7    De Minimis Distributions. No interim cash payment of less than twenty-five dollars ($25.00) will be made by the Debtor to any Creditor unless a request is made in writing to the Debtor to make such a payment; provided, however, such Creditor will receive, at the time of the final Distribution, a Distribution equal to the cumulative Pro-Rata Distribution paid to all other holders of Allowed Claims in its class.

6.2.8    Fractional Dollars.  Notwithstanding any other provision of the Plan, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

19

6.2.9    <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

6.3    **Notices.**  Any notice described in or required by the terms of this Plan or the Code and Rules shall be in writing and, if by facsimile or personal service, shall be deemed to have been given when actually received, or if by mail, deemed given three (3) days after the date when mailed by certified mail, postage prepaid, return receipt requested, and one (1) business day, if sent by a nationally recognized overnight courier service, and addressed as follows:

(a)    If to the Debtor, addressed to:

Atlantic Energy Concepts
Attn:  Kenneth Field
P.O. Box 14745
Reading, PA 19612

With a copy to Counsel:

Aris J. Karalis, Esquire
Karalis PC
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500

6.4    **Default.**  No default shall be declared under this Plan unless any payment or performance due under the Plan shall not have been made or deemed made within thirty (30) days after written notice of the default to the Debtor and counsel for the Debtor of failure to make payment when due under the Plan.  The Debtor shall have thirty (30) days after receipt of written notice of any default under the Plan in which to cure such default.

6.5    **Cramdown Provision and Confirmation Request**.   In the event that sufficient votes to confirm this Plan are not received, the Debtor requests confirmation of the Plan pursuant to the provisions of § 1129(b) of the Bankruptcy Code.  Otherwise, the Debtor requests confirmation of this Plan pursuant to the provisions of § 1129(a) of the Bankruptcy Code.

**ARTICLE VII**
**Executory Contracts**

7.1    **Rejection of Executory Contracts and Unexpired Leases**.  All executory contracts and unexpired leases that exist between the Debtor and any Entity shall be deemed automatically rejected by the Debtor on the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date.

20

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections on the Effective Date, pursuant to §§ 365 and 1123 of the Bankruptcy Code. Nothing contained herein is intended to limit or alter the effect of § 365(g)(1) of the Bankruptcy Code.

7.2 **Rejection Damages Bar Date**. If the rejection by the Debtor (pursuant to the Plan or otherwise) of any executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or the Debtor's Estate, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order, or (b) other notice or order that the executory contract and unexpired lease has been rejected; provided, however, that the foregoing requirement to file a Proof of Claim shall not be applicable to any such Claim that was previously allowed by Final Order of the Bankruptcy Court.

## ARTICLE VIII
## Causes of Action

8.1 **Retention and Enforcement and Waiver of Claims.** Pursuant to § 1123(b) of the Bankruptcy Code, the Debtor shall retain and shall have all requisite standing under the law to commence, continue or enforce any and all claims, including any adversary proceeding that needs to be commenced after confirmation of the Plan to determine the extent, validity and priority of the security interests held by SummitBridge, Allied, Hartford and C&F in the remaining proceeds from the sale of the Assets that have not been disbursed by prior Order of the Bankruptcy Court. The proceeds of any recovery shall be disbursed according to the terms of the Plan. These claims shall remain vested in the Debtor.

8.2 **Powers**. Except as otherwise set forth in this Plan, the Debtor shall have the right to commence, settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action, Avoidance Action or other claims held by the Debtor's Estate from time to time in its sole discretion.

## ARTICLE IX
## Provisions for Resolving and Treating Disputed Claims

9.1 **Objections to Claims; Prosecution of Disputed Claims**. Prior to the Effective Date, the Debtor may object to the allowance of any claim or interest. From and after the Effective Date, the Debtor may object to the allowance of Claims filed with the Court and all objections to the allowance of Claims shall be litigated to Final Order or compromised and settled, subject to approval of the Bankruptcy Court after notice only to the Debtor, the holder of such Claim, and parties requesting notices in the case pursuant to applicable Bankruptcy Rules, and a hearing. Failure to object to any Claim for purposes of voting on the Plan shall not be deemed a waiver of the right to object to such Claim at any later date.

9.2 **Late Filed Claims.** No objection shall be filed with respect to any proof of claim filed after the Bar Date, and the holder of any such late filed proof of claim shall receive no Distribution under the Plan, except as specifically ordered by the Bankruptcy Court following a motion by such claimant, after notice to the Debtor, counsel for the Debtor, and such parties as the

Court may direct, and a motion and hearing thereon. Any such motion shall be filed on or before the Effective Date or the holder of such Claims shall be forever barred and all such Claims shall be discharged. Nothing herein shall constitute a waiver by the Debtor or the Debtor's Estate of any counterclaims, setoffs, or of any defenses with respect to such late filed proofs of claim, including defenses as to the timeliness of the filing of such proofs of claim.

9.3     **Status of Distributions Pending Allowance**. No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim becomes an Allowed Claim.

9.4     **Reserve for Disputed Unsecured Claims**. On or after the Effective Date, the Debtor shall hold in the Disputed Unsecured Claim Reserve, Cash in an aggregate amount sufficient to pay each holder of a Disputed Unsecured Claim at the time distributions are made, pursuant to the Plan, the amount of cash such holder would have been entitled to receive if such claim had been an Allowed Claim on the Effective Date. Cash withheld and reserved shall be held until a determination is made on the allowance or disallowance of the Disputed Unsecured Claim. If the final determination of the Disputed Unsecured Claim results in the Claim being allowed, its holder will be paid from the Disputed Unsecured Claim Reserve based on the amount of its Claim that is allowed. If the final determination results in the Disputed Unsecured Claim being disallowed, the cash reserved will be paid on a Pro-Rata basis to the other holders of Allowed Unsecured Claims. If practicable, the Debtor may invest cash in the disputed unsecured claim reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment. Nothing herein shall be deemed to entitle the holder of a Disputed Claim to post-petition interest on such Claim.

9.5     **Estimation Period**. The Debtor may, at any time after the Effective Date, request that the Bankruptcy Court estimate any unliquidated, contingent or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of whether the Claim has previously been objected to. In the event that the Bankruptcy Court estimates any unliquidated, contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court. Notwithstanding this, the Debtor may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim. All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

9.6     **Distributions After Allowance**. Payments and Distributions to each holder of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that governs Distributions to such Claimants.

## ARTICLE X
## Retention of Jurisdiction

10.1     Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, this Case and the Plan, including, among others, the following matters:

(a)     to hear and determine pending motions for (i) the assumption or rejection or

(ii) the assumption and assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom, including the amount of any cure payment, if any, required to be paid;

(b)    to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained, pursuant to this Case or the Plan, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)    to adjudicate any and all disputes arising from or relating to the Distribution or retention of any consideration under the Plan;

(d)    to ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished as provided herein;

(e)    to hear and determine any and all objections to the allowance of Claims and Interests and the estimation of Claims, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Interest, in whole or in part;

(f)    to enter and implement such orders as may be appropriate if the Confirmation Order is, for any reason, stayed, revoked, modified or vacated;

(g)    to issue orders in aid of execution, implementation or consummation of the Plan;

(h)    to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    to hear and determine all applications for compensation and reimbursement of Fee Claims under the Plan or under §§ 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(j)    to determine requests for the payment of Claims entitled to priority under § 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(k)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(l)    to hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

(m)    to hear and determine matters concerning state, local and federal taxes in

accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

        (n)    to hear any other matter not inconsistent with the Bankruptcy Code;

        (o)    to hear and determine all disputes relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

        (p)    to enter a final decree closing this Case; and

        (q)    to enforce all orders previously entered by the Bankruptcy Court.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims, Interests and Retained Actions.

## ARTICLE XI
## Miscellaneous

11.1    **Choice of Law.**  Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to the choice of law rules thereof.

11.2    **Payment of Statutory Fees.**  All fees payable pursuant to § 1930 of Title 28 of the United States Code shall continue to be paid pursuant to the provisions of such section. The Debtor shall file all post-confirmation quarterly reports.

11.3    **No Discharge of Debtor**.  The Confirmation Order shall not discharge the Debtor from any debt and liability that arose before the confirmation, as provided in § 1141(d)(3)(A) of the Bankruptcy Code.

11.4    **Severability**.  Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.5    **Binding Effect**.  The Plan will be binding upon and inure to the benefit of the Debtor, the holders of Allowed Claims, and their respective successors and assigns.

11.6    **Withholding and Reporting Requirements**.  In connection with the Plan and all instruments issued and Distributions made pursuant to the Plan, the Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions made pursuant to the Plan will be subject to any such withholding and reporting requirements.

11.7    **Automatic Stay**.  The automatic stay of § 362 of the Code shall remain in effect until

the Effective Date.

11.8    **Modification and Amendments**.  The Debtor may alter, amend, or modify the Plan or any Exhibits thereto, under § 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in § 1101(2) of the Bankruptcy Code, the Debtor may, under § 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

11.9    **Destruction of Records**.  After the Effective Date, the Debtor, in its discretion, may continue to retain the Debtor's business records, abandon such records, or destroy such records without further Court approval.  The cost or expense of retention or destruction incurred from time to time shall be paid from the Assets of the Debtor's Estate, without need for further Court approval.

11.10    **Liability in Connection with Plan**.  Neither the Debtor nor any of its attorneys, accountants, financial advisors, investment bankers or agents shall have, or shall they incur, any liability to any Creditor or Person for any act or omission in connection with or arising out of their duties and participation in this Case, the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and all such Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  The foregoing shall not, however, affect the liability of the Debtor to any Creditor in connection with any Allowed Claim under the Plan; or shall the foregoing affect the liability of any party with respect to any act or omission that has occurred prior to the Petition Date.

**MID-ATLANTIC ENERGY CONCEPTS, INC.
d/b/a ATLANTIC ENERGY CONCEPTS**

By:    /s/ Kenneth Field
    Kenneth Field, President

**KARALIS PC**

By:    /s/ Aris J. Karalis
    Aris J. Karalis, Esquire
    Robert W. Seitzer, Esquire
    1900 Spruce Street
    Philadelphia, PA  19103
    215-546-4500
    Attorneys for the Debtor